Good afternoon, everyone. Now's the time for hearing upon remand from the Supreme Court of Rodriguez v. Marin. And I've been informed that the petitioners will proceed first. Okay, Mr. Renthilam. Close. Thank you, Your Honor. I'd like to reserve five minutes for rebuttal. Ahilan Arulanandam for the petitioners, and may it please the Court. I'd like to start with the Court's order. Just a second. Judge Gould, greetings, and can you see everyone and hear everything? Greetings, yes. Good afternoon. I can see you all and hear you. Okay. Nice to see you as well, Judge Gould. Thank you. I'd like to start with the Court's order from last week, which asked us what remedy would be available if the Court found detention unconstitutional under one or more of these statutes. The relief that the Court ordered in 2015 on statutory grounds is available on constitutional grounds now, and that means immigration judge hearings after six months where the government bears the burden of proof by clearing convincing evidence. With two important exceptions that I will discuss, our view is that that relief is available and required under this Court's existing cases, and in particular, JUF II, which held at six months, is the time period after which bond hearings are required for detainees held under 1231A6, and V. Singh v. Holder, which established clear and convincing evidence as the burden of proof for prolonged detention bond hearings under 1226A. All right. Those two statements just raised about five questions in my mind, but to go back to the first sentence as to remedy, that raises the question of whether we would have the authority or power to issue injunctive relief in this case. And relatedly, and I'm sure you're going to get there, given the Supreme Court's determination that constitutional avoidance is not the appropriate avenue of reasoning, are Singh and Jeff still good law? Yes, Your Honor. So the first question about the injunction we agree is open. Neither of those two cases resolve the question of whether this Court can affirm an injunction on class-wide grounds on a constitutional basis. Let me just quickly answer your second question and then come back to that. Okay. Both JUF and Singh are constitutional decisions. Singh is explicitly unambiguously a constitutional decision. It does prejudice analysis. It cites only constitutional cases and civil commitment cases and things like that. There is a line in Singh that gives me pause. That was Judge Fischer who wrote that. And he said, we don't see how Congress would intend to have made this statute impose indefinite detention. And when he says that, I'm not sure that he's saying this is a constitutional decision if he's looking at what, if he's asking himself the question of what constitutional intent was. Congressional intent. I'm sorry. Congressional intent. Yeah. Fair enough, Your Honor. I think there are many places where the Court has, at times, sort of gone back and forth a little bit. And that was consistent with Zividus in our view. But, you know, I think there is some ambiguity in that respect. But it has a long section on prejudice. I mean, it finds that the hearing right there, there was a hearing that was conducted, but it wasn't conducted with the proper burden of proof. And it goes through and says that that might have made a difference. Prejudice is only a factor under the Due Process Clause. If it were conducting statutory, pure statutory interpretation, that would not have made any sense. For JUIF, I think it's a closer question because I think JUIF does say we construe 1231A6. But if you look at the reasoning that they give for why hearings are required and why the regulatory protection, which is just a post-order custody review, is insufficient, it's entirely constitutional. They say the liberty interest is profound. The government's interest here is not significant enough to justify not providing this meager protection of bond hearing. And it's really speaking in terms of a weighing of interest, which only makes sense, again, as constitutional reasoning. So, you know, in our view, it's controlled. I think even if it weren't controlled, the Court would have to explain now why the reasoning in that part of the reasoning of JUIF, which is the heart of the reasoning, you know, in that part of the opinion, is distinguishable in some way. It's really a problem because we have decades of law on this. And the question then is to what extent did the Supreme Court's decision in Jennings undo all of that? And, of course, Rodriguez III was predicated on that long history of our Court's decisions. It was, Your Honor. And I think the rationale in many of those decisions is constitutional. Every single one of them, I believe, is an avoidance decision. And many of them, like if you look at Tajani back in 2005 and look at Judge Tashima's concurrence there, or you look in Casas-Casrion, they're all talking about due process. So it's very hard, I think, now for the Court to back away either from the initial premise or the six-month rule. Okay, Counsel, could I interject a question, please? So I definitely can see and understand how the constitutional principles require that there be a hearing in a certain period of time and require that the government have the burden of proof of showing a threat to the community or a flight risk. Because those things sound to me in sort of fundamental fairness, which animates a lot of our Constitution. But I'm having more trouble just with the single aspect of whether the government should have to prove one of those things, that there's danger to the public or danger of flight risk by clear and convincing evidence, as opposed to the preponderance of the evidence. Because I thought there was some statutory law, maybe in the Bail Reform Act, some statute about bail that probably goes to preponderance, not clear and convincing evidence. So if that was true in the statutory framework, why would the Constitution require more? Yes, Your Honor, preponderance is the flight risk burden that the government bears in hearings under the Federal Bail Reform Act. So perhaps that's what you were thinking of. But those are hearings that occur at the outset of detention, within days after the person is held. And we don't contest that actually even the detainee bears the burden at the outset of detention, which is the way it is under the regulations. But in our case, that's not what we're talking about. Everybody here has been incarcerated for six months, which is a much greater deprivation of liberty than the deprivation of liberty at issue in the Bail Reform Act provision that you cite. Excuse me, you didn't cite it, but I was guessing maybe you were thinking of. And, Your Honor, when Singh adopted the clear and convincing evidence standard, it looked to civil commitment cases like Fuchsia v. Louisiana and several other cases that are cited along with that for the view that any time you have a significant deprivation of liberty, clear and convincing evidence is the standard that has been required. So, again, I still think it's very hard to explain, unless the Court's going to now unwind Singh and say that Singh's constitutional reasoning has been abrogated by a completely statutory holding from the Supreme Court, I think it's very difficult to explain why that would be the rule in Singh, which is about a prolonged detention of a person with convictions that would otherwise have put him under 1226C. It's identical to the people in our 1226C class, and say that, well, that was that, but this is somehow different. But even if the question is open, Your Honor, and you're doing it from scratch, that's what we would point to. Prolonged detentions in the civil commitment context, the burden of proof is clear and convincing evidence. Okay, thank you. Your Honor, with respect to Judge Wardlaw's other question about 1252F, the government has, and here what we're talking about is whether the Court has the power to issue an injunction, as opposed to just declaratory relief. The first point I want to make is the government has conceded that you can get a class for declaratory relief alone. We made that argument in our opening brief in response to the Supreme Court's question, and the government has explicitly declined to contest that. So the only thing we're talking about now is the same opinion which would set out the same rules, whether it would only be by declaration in the district court's order or instead would be by injunction. And we think it's important that it be by injunction because the government has to show an unmistakable legislative command, those are the words from Rodriguez 1, or an inescapable inference to restrict the federal court's traditional equitable authority. And here we're talking about a very important bit of equitable authority. It's the authority to issue relief in habeas cases by ordering the government to provide what due process requires. So if they're going to take that away, the language should be very clear. And it's not. In fact, I think we have the better reading of the statute here. The government, I think the core of it is to focus on the exception language, which is the statute says no court can enjoin the operations of these provisions other than with respect to the application of such provisions to an individual alien against whom proceedings have been initiated. And the whole dispute here is really about those an individual alien against whom proceedings have been initiated. Now, they say individual alien means singular. And because it's singular one, therefore, no class wide injunctive relief. And the problem with that argument, your honor, there are many. But the most serious problem is the logic of it isn't limited to classes. But it covers if individual really means singular and is meant to mean like two people can't sue in the same case. That means two detainees like detained the same day under the same statute for the same period of time couldn't bring a joint habeas petition. And it's not just even limited to habeas cases in any context. As I understand it, you can't get injunctive relief on their theory more than one person at a time. That's a very odd rule. And it would displace all of the joint rules. Very strange. In contrast, our view is that an individual alien is meant to refer in contradistinction to organizations. Because there were a number of suits brought by organizations seeking broad scale injunctions on behalf of people who had not yet been enforced against. And so that other part of it, other than with respect to individuals against whom proceedings have been initiated, that we give meaning to that. Because it was meant to distinguish cases like Catholic Social Services and McNary for people who were not in proceedings, nonetheless sought broad scale injunctions. That's the core of our difference. And our argument, I think, has a lot of support from the Supreme Court's decision in Califano that there was a jurisdictional provision in Califano. It said any individual who's aggrieved by the Social Security Administration can bring a civil action. And the government said, oh, it says any individual, therefore no class actions. And the Supreme Court rejected that. They said no, any individual just as a way of referring to the particular party, but it's not strong enough to displace all of the normal civil rules, including the class action rule. And, of course, we have evidence that Congress understood that in our statute, because the neighboring provision, 1252E, Your Honor, refers to Rule 23. Specifically, it says, it mentions Rule 23 by name in a neighboring provision to the statute. So if Congress wanted to say no class wide injunctions, then they could have said no injunctions under Rule 23. And that's the core of our argument. I mean, they say any individual is different from an individual. That's a very hard argument to make, because Califano referred to other statutes that used words like the plaintiff. That's the mandamus statute. A participant or beneficiary, that's the ERISA statute. None of those were good enough to eliminate Rule 23 authority to grant relief under Rule 23. So that's the core of our argument as to why we think an injunction is permissible here. Your Honor, unless the court has more questions about 1252F, I'm inclined to turn to arrivings. But I want to make sure that. So this is the other issue that Judge Wardlaw, we concede, is not covered by JUIF and v. Seng, because obviously those were not involving arriving asylum seekers. And I want to just underscore as strongly as I possibly can, our class of arriving asylum seekers are people who by definition have passed the credible fear interview. They've been screened in for removal proceedings. And that means as a statutory matter, this is written into the statute in 1225B1, they have a significant possibility of establishing eligibility for asylum. That's what it means to pass that credible fear interview. You have a significant possibility that you will establish, get asylum. And from our data, we know even when our class members were all detained and none of them got bond hearings, two-thirds of them ultimately won asylum, litigating from detention. So Congress intended that these people be treated the same as, quote unquote, any other alien. That's the legislative history. And that's why once you pass that credible fear interview, you're sent into normal removal proceedings in front of an immigration judge, just like any other person who's arrested within the U.S. Now, the government says nonetheless, despite that fact, two-thirds of these people will win asylum. They're subject to the entry fiction. And Mazai and Barrera mean that these people have no rights against their detention. And I mean, I have many, many problems with that. But I think our core problem with that, Your Honor, is that it just doesn't do justice to the fact that Mr. Barrera had lost the right to live in this country. So for him, he had no possibility of establishing his right to live here. Mr. Mazai had lost the right to live here. They're just not the same as people who haven't lost that right. And the implications of their argument, Your Honor, if this holds, that arriving asylum seekers who have passed the credible fear interview have no due process rights with respect to their detention, then you could ban the parole process entirely and just eliminate it and detain them all. Or you could just attack it sort of piecemeal, which is what the government, the new administration has done. The Human Rights First amicus brief actually talks about this a lot, about how the parole process is already, it was already bad, but it's now under massive attack. It means that things like the detention in Nataraja, you know, it was four and a half years despite winning in front of the immigration judge twice. But that's constitutional on their view, very clearly constitutional, because he has no right to be free from detention as long as his admissibility has not finally been adjudicated. That's their view. So I don't think that can be the law. I don't think it can be squared with this court's Fifth Amendment cases like Wong. And it just doesn't, as I said, recognize the basic difference between our class members and the people who were at issue in cases like Barrera and Mazai. Your Honor, I'd like to reserve the balance of my time unless there's a question. Does anybody have any questions? No. No questions here. Good afternoon. Good afternoon, Your Honors. May it please the court. I'm Sarah Wilson. I'm here on behalf of the federal respondents. Now that the Supreme Court's resolved all the statutory claims in this case, we ask that the injunction that was entered solely on the basis of those statutory claims now be vacated and that the court now, and that the court dismiss the class's constitutional claims as unsuitable for class-wide adjudication. Section 1252F1. Let me ask you a question. Why should we be deciding all of these issues, including whether we modify the definition of the class or who's included, especially in the arriving alien class? Why shouldn't we just remand this to the district court? Well, I think that there are some things that you wouldn't be able to do at this stage. That's been our position, that this is far too late in the litigation to be making these changes. Should we remand it to the district court? I mean, the Supreme Court, after having the parties brief this twice and two oral arguments, didn't reach the constitutional decision on the rationale that it should be decided by the lower court, meaning us, I guess, in the first instance. Why doesn't that reasoning apply to us, too? Why shouldn't we just send this back? Because from day one, I realized this litigation's been going on a long time. I know I personally was substituted into it and have been on it for many years now. But it's been proceeding entirely throughout the course on the basis of the constitutional avoidance theory. And now the Supreme Court said that's not the theory. So shouldn't we send this back to the district court? I don't think so, Your Honor. I mean, at this stage, we have a record developed. The case is now less fact-specific and fact-driven than it was previously because now the limited question is whether they can establish that there is a baseline constitutional right that is across the board universal for every individual in this case. That doesn't call for the type of factual analysis that this court previously had to do under the constitutional avoidance cases. So to the extent that they're presenting a sole legal question here, I think that it is one that this court can decide. As far as the class certification issues, we could probably go through the different classes and talk through how each one of those works and whether those modifications are appropriate at this stage or whether it should be reexamined by the district court. But in general, they're not asking for modifications other than to excise the lawful permanent residents from the 1225B subclass. Those are the only individuals that this court recognized in Rodriguez 2 to have a legitimate interest in receiving a bond hearing. If this court wants to take out the sole individuals that have those interests, then there really is not much left to be done. It means that the relief available for the class should be denied with respect to the 1225B subclass. So it's not a matter of whether or not you're modifying the class or not modifying the class. You would just be denying relief to those individuals. So is there a disagreement as to the length of detention in this case? Or do you concede that there has been beyond six months and beyond members of the class? The class is defined to include only individuals who have been detained for six months or longer. So the class is exclusively made of people who have reached that baseline number. There is disagreement about how to talk about an average or a median and what number is most appropriate. None of those numbers seem to be dispositive of the way in which the parties are arguing the case at this stage, however. But beginning with the jurisdictional provision, Section 1252F1 is a very clear, unambiguous bar. Petitioners are not even focusing on their argument about how this injunction necessarily interferes with the operation of the three provisions that are challenged here. And the Rodriguez or the Jennings court really confirmed that by saying that each one of the injunction's requirements with respect to each of the three detention provisions were fundamentally at odds with the requirements of the statute. Now it's just only whether or not the exception language would apply. Now we've made a lot of arguments about how an individual alien, as used in this provision, is meaningful because it is the only place in the INA that they chose to use this language. So to instead do as petitioners do and suggest that what they really meant is that any alien can bring those claims would be to fundamentally change the wording of that statute, the meaning of that statute. And it's inconsistent with the way in which they describe the legislative history. They describe that provision as being motivated by three specific cases. Those cases didn't involve only organizational plaintiffs. They also included classes, classes of aliens, some of which were in proceedings. It would make very little sense to react to these cases that you felt to be such a stress on the administrative goals and on implementation efforts and then to simply pass a statute that only essentially did very little to protect you from those very same cases. And thus we suggest that you should adopt the reading of the statute that the Supreme Court passed off on in Reno v. ADC. There the court gave the most plausible reading of that statute, the most plausible reading of that exception and determined that it would bar precisely the type of relief being sought here. As a result, this court can't simply convert this injunction into one that's a remedy for the constitutional claims. But the district court's injunction also fails as a remedy for the constitutional claims on the merits. Each of the subclasses presents some unique certification problems and merits issues, so I'd like to kind of talk about them individually, beginning with the arriving alien subclass. This subclass, as this court's doubtlessly aware from decades of dealing with this case, deals with a rather unique combination of individuals, categories of individuals that include, at least hypothetically, lawful permanent residents that are arriving or attempting to re-enter the United States. But it also includes a number of individuals who are trying to enter the United States for the first time, only some of which have been found to have a credible fear. There's also another set of individuals under B-2 who are presenting at a port of entry for potentially the first time and there's just a question as to whether they're entitled to admit. So we're talking about three rather distinct categories of individuals. And these categories propose a very difficult problem for this court and for any court attempting to conduct a Rule 23 analysis on the relief sought. That's for two primary reasons. The first is that they're subject to distinct legal standards. And the second is that they're subject to distinct legal procedural entitlements. So beginning with the legal standards, this court need only look at Mazzei, Barrera, and Placencia to see that the questions posed, the legal standard presented, in evaluating those claims is different. They don't ask the same questions. They don't do the same analysis. They don't consider the same factors. None of the same information matters in Placencia as mattered in Barrera and Mazzei. This class encompasses both. And simply excising the lawful permanent residents from the class doesn't solve that problem. Mazzei himself was a lawful permanent resident but was one who was deemed to have abandoned status versus the Placencia LPR, which was deemed not to. Those are fundamental differences that affect the way in which an analysis could be conducted. In addition, these individuals are also subject to different procedural requirements, regardless of whether all the arguments in the briefing, the arguments that Petitioner just made about the effectiveness of that parole memo. The fact is that there's a subset of individuals under the 1225B subclass that are subject to those requirements, and indeed there's an injunction in place requiring that the government follow those procedural requirements. Those include automatic interviews. Those include written decisions of the parole determination. And they include a different standard governing decisions for making those parole determinations. Those facts, that information, would require a fundamentally different analysis of the constitutional challenge brought by individuals subject to those conditions because you can only find the statute on constitutional if you're looking at what procedural entitlements have been provided and why are additional procedural retirements necessary to solve an erroneous deprivation in the future. It's simply not the case that this court could pluck an individual 1225B subclass member out of the subclass, conduct a legal analysis, and say, ta-da, this applies to everyone. That's just not the case. Those individuals have unique legal precedent, unique factual backgrounds, unique procedures that apply to them. And for the reasons that this court already determined in Rodriguez 2, a large portion of their claims could fail at the six-month mark. We can talk about the parade of more terrible examples of things that might happen, like Nataraja, the four-year mark, or what may happen years down the road. You said by definition of the class, these are people who will have been detained for six months, not have been deemed removable within the six months. Will not be deemed removable, Your Honor. Right. You said they can fall out of the six-month bar for lots of different reasons before we get to the six months, but those people wouldn't be in this class. So, not necessarily. I think this is an important point. This class is defined in a way that it would include individuals who have been ordered removed by an IJ, have been denied asylum, again, affirmed by the board, who are just waiting for this court to act on a motion for a temporary stay of removal. Under this court's precedent, under Pareto-Romero's, the Pareto-Romero decision, which I don't think anybody's contesting has been changed by the Jennings decision, those people are included in this class, and they submit that there would be a universal entitlement for those people to have. Those people don't look anything like, you know, newly entrants, new entrants, or are people that are on their way into the United States. Those people look very much like Barrera and Mazay, who have lost their opportunity, lost their asylum applications, and at that point, the government has arguably the strongest interest, a stronger interest than they did on day one in continuing to detain those individuals without a bond hearing. To the extent the court finds that there is some constitutional concern, though, with 1225B, the remedy for that is not to do as it has done here and order bond hearings by a clear and convincing evidence standard. We provided a lot of arguments in the briefing about why that standard is particularly onerous when you're talking about a class of people who have very little ties to the United States and the difficulty of attempting to apply the alternatives to detention framework to individuals that don't have the level of community ties of folks that are ordinarily, or previously, prior to the injunctions, eligible for that program. The remedy would have to be something much more narrow, and we suggested previously in our briefing that that would be, that would be that the court would read the lawful permanent residence out of the case. And that would also assess it out of the class, and they could do so by finding that 1101A23C is not constitutional as applied to certain lawful permanent residence like, that meet the characteristics of, like, Placentia, for example. And that would be a much more narrow and much more fair way to address the constitutional problem that gives real credence to what Congress was attempting to do. And what Congress was attempting to do under 1225B is to make the sole arbiter of decisions on who was able to enter the United States the executive and not the immigration judges, because they felt that these categories of individuals were people that it was very difficult to make judgment calls about whether they were likely to flee, whether they were likely to commit additional crimes. The subclass of individuals detained under 1226C has similar problems, similar Rule 23 and merits issues. First is that the Due Process Clause just ordinarily doesn't call for a fixed time limit. And I would submit that nothing in any of the court's cases, Duth included, suggests that there has to be a bright line six-month rule for all individuals. The language in Duth was clearly meant as constitutional avoidance language. It's suggesting where a bright line or where concerns, quote, concerns may occur. And it was speaking in the post-order context. Never has this court suggested that there's a six-month requirement that applies to individuals in pre-order detention, and certainly never suggested that that rule would apply universally every time proceedings last more than six months. And recall what I mentioned earlier. This isn't just when proceedings last six months. This is when the entire proceedings leading up to a decision on the stay or if a stay is granted including the time spent during a stay pursuant to the cost decision, all of that time would be considered pre-order detention. Those individuals would be eligible for bond hearings under the court's ruling, under the injunction here. That's simply not required as the basics of due process. The court may have found that to be the case under a statutory interpretation where the court was compelled to apply the least common denominator. That's not the case now. Now the constitutional analysis has to start from the presumption that these statutes are constitutional in all of their applications. And the only way to overcome that constitutionality is by applying the Matthews factors and finding that there is no strong government interest and that there is a risk of an erroneous deprivation absent providing additional protections. And there's several categories of individuals within all of these subclasses that that's simply not the case, like the individuals who have already been ordered to remove who shouldn't have no right to seek a bond hearing and that their only avenue for release would be should the government prove unable to remove them under the Zabita standard. I'd like to spend a couple of minutes talking about the 1226A subclass because they present a number of very unique World 23 challenges based on the breadth of that subclass in addition to some of the existing law in the circuit about how that would operate. And the first is that unless this court decides that CASAS has been abrogated, there's a very strange feature of the 1226A subclass in that it includes both non-criminal and criminal aliens. That means that we have people that have fundamentally different interests in obtaining additional bond hearings or additional bond hearings under these heightened protections all clumped into one subclass where this court would have to commonly analyze those interests.  There's a greater categorical interest on behalf of the government in making those judgments with respect to criminal aliens or aggravated felons. So that was deemed to be an acceptable approach under the statute for those individual aliens but not for non-criminal aliens. That changes the analysis. It changes the cases that this court would look at. It changes the analysis that this court would undertake in doing the constitutional claim. It's simply not one that would be possible for the court to conduct all at once. But secondarily, the 1226A subclass includes individuals that have already had bond hearings and individuals who have not already had bond hearings. So that presents a fundamentally different claim between the subclass. So we have individuals who are challenging their detention without a bond hearing as opposed to individuals who are challenging their detention, period. Those are different claims that would be analyzed under different provisions and would require the court to look at different information. Why was bond denied? Was there a bond appeal? Was there a changed circumstances hearing? All those things would be relevant to the determination of whether there would be an erroneous deprivation absent an additional hearing. And that makes sense. There's still an opportunity for those individuals to raise those claims, but they would have to do so in an individual habeas petition where an individual court could look at those facts, look at the reasons why the bond was denied originally, and make a determination about whether a new bond hearing is warranted under the appropriate due process factors. There's also just no basis for this court to change the way in which 1226A operates. 1226A provides a constitutional backdrop, a constitutional framework for properly evaluating the government's interest in continuing to maintain detention of individuals who have not been convicted of crimes. It provides proper deference to the Congress's determination Thank you. That's very nice, Your Honor. So it gives proper deference to Congress's judgment that these were individuals that were particularly difficult to make difficult for Congress to make people that Congress determined it was difficult for IJs to make judgment calls about whether they are likely to appear for their hearings and whether they're likely to commit additional crimes. It doesn't set a least restrictive means task. That isn't required. Under Damore, we know the government is not required to employ the least restrictive means when dealing with individuals that they're attempting to remove or are in removal proceedings. And that's exactly why, despite the court in Zavidas extensively citing Addington and Foysha and all the civil commitment cases, despite talking very extensively about those cases and that history of body of law, didn't opt to put the burden on the government and didn't opt to require an automatic hearing. Instead, what the court did in Zavidas is rather striking. The court said, sure, there's a constitutional standard. There's a constitutional bright line. It's only presumptive. And if you want to vindicate those interests, you have to come to us. You have to file a habeas petition. And you, the alien, have to show that there's not a likelihood that you are going to be removed. That's information that is far less in the individual's wheelhouse than the likelihood that they're going to commit additional crimes or the likelihood, you know, their ties with the community or the other things that might be relevant to a determination of whether they're going to be a flight risk. Thanks, counsel. Judge Gould, if I could interject a short question about your theory on this. Under your view, would each alien have to seek habeas like one alien at a time? So, no, not necessarily. The question is about, if you're asking about under 1252F1, 1252F1 only bars the court from entering injunctive relief. It doesn't bar, we haven't taken a position that it bars class actions generally. It doesn't bar declaratory relief in our view. So there's still plenty of opportunities for individuals to proceed and challenge the statutes in combination. In addition, our argument has never been that the Due Process Clause somehow serves as a blanket bar on class actions. Our argument is much more nuanced than that. Our argument is that this particular class is so expansively defined that you can't take the necessary three-pronged analysis that we cite from Placentia and apply it commonly. It's just not possible to take one individual and make those determinations. Now, it could certainly be possible to take a smaller set of individuals that share enough common features that you could conduct that analysis. That's just not the case here. And that's part of the reason is that there is no uniform due process right to a bond hearing at six months irrespective of anything else in your proceedings without respect to the reasons why your proceedings remain ongoing, and certainly not without considering whether or not the government and the reasons for the delay indicate that the government is no longer vigorously pursuing a removal. Okay. Thank you. Thank you, counsel. Four things, Your Honor. First, with respect to the government's arguments about the commonality problems in the 1226C and 1226A groups, Your Honor, what they have in common is that they've all been incarcerated for at least six months, and that deprivation of liberty has occurred without a hearing where the government has had to show that there's a reason for their detention. And if you look at all the civil detention doctrine, pretrial, civil commitment, juvenile, all of them, they give the bond hearing at a fixed period of time irrespective of the strength of the person's claim for release. Now, it's not always like literally the same day, but our order is not that either. The district court order gives a two-week window, 180 to 195 days to conduct the hearing, and that is very similar to what you see in Salerno, Kansas v. Hendricks, Shaw, et cetera. None of those vary the availability of the due process relief based on individual circumstances about the person. Those all go to whether they get out of detention at the hearing, not whether they get the hearing in the first place. Similarly, their argument about habeas, I guess I don't fundamentally understand. I mean, Zidvaitis didn't hold that an administrative agency is exempt from the due process clause's requirements just because somebody can file a habeas petition. A pretrial detainee can also file a habeas petition. A sex offender can file a habeas petition, but still the government also has to comply with the due process clause by ensuring that the detention is reasonably related to its purpose. And that is particularly important to us because a lot of our clients cannot file habeas petitions. This record amply establishes the Merida Declaration, the Inlander Declaration, people talking to detainees who were eligible for bond hearings, but they didn't have access to the court so that they could ask for that relief. The points about 1252F, just very briefly, Your Honor, ADC and this court's use, the Supreme Court's use of this class-wide injunction language, I just want to be very clear, that is a red herring because our provision also permits, reads this provision to bar a number of class-wide injunctions, as I mentioned earlier, and their reading goes far beyond just prohibiting class-wide injunctions. As I said, it prohibits even two people from getting an injunction, if you read the word an individual alien, to actually displace all of the joinder rules, which is what their position is. And the last point I want to make concerns your question about remand, Judge Wardlaw. Our concern about remand, about a complete remand, is that if you vacate this injunction, there's massive harm that will come to so many detainees while we litigate and do whatever it is that would be required in the future in the district court. Well, I'm wondering if that's why the Supreme Court didn't vacate the injunction. Perhaps, Your Honor. The Supreme Court could have vacated this injunction easily if they wanted to. Absolutely, and they reversed without vacating, Your Honor, and that's because this record discloses a massive number of due process violations that the injunction has served to remedy. And if the court has a concern just about the returning LPRs, you can carve them out. You could remand that portion, and we could find a named rep and do discovery on numerosity if there is numerosity for the returning LPRs, which I'm not sure whether there is or not. But if you do that, Your Honor, we would just implore you to actually still address the merits of the arriving asylum seekers who are the vast majority of that class. As Justice Black had said in his dissent in Mazzai, he said the founders abhorred arbitrary one-man imprisonments, and that is what the system is. It's the jailer deciding without just checking a box on a form to imprison you for years. There's no hearing. There's no record. There's no appeal. There's no way to correct even the most basic errors. So if the court remands without addressing that question, there will be a lot of asylum seekers who will be imprisoned without due process for a very long period of time before somehow we're back here. Other questions? Anything else? All right. Thank you, counsel. Thank you for an excellent argument, as usual, on both sides. And Rodriguez v. Marin will be submitted, and this session of the court is adjourned for today. All rise.
judges: Wardlaw, Gould, Haddon